IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**LEOPOLDO NEVARES,**

      **Plaintiff,**

v.                                         No. CIV 99-1437 MV/LCS

**KENNETH S. APFEL,**
**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

      **THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 11), filed August 25, 2000.  The Commissioner of Social Security issued a final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income.  The United States Magistrate Judge, having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, finds that the motion is well-taken and recommends that it be **GRANTED**.

### PROPOSED FINDINGS

      1.      Plaintiff, now forty-six years old, filed his applications for disability insurance benefits and supplemental security income on March 14, 1996, alleging disability commencing September 1, 1995, due to vertigo, hepatitis, high blood pressure, pain in his left side, an ulcer and memory problems.  (R. at 88-91; 98; 179-82.)  He has a second grade education and past relevant work was as a cement finisher and construction worker. (R. at 41-43; 46; 88.)

2.	Plaintiff's applications for disability insurance benefits were denied at the initial level on May 8, 1996, (R. at 55-56; 183), and at the reconsideration level on August 27, 1996. (R. at 57-58;185.)  Plaintiff appealed the denial of his claim by filing a Request for Hearing by Administrative Law Judge (ALJ) on November 13, 1996. (R. at 68.)  The ALJ held a hearing on July 17, 1997, at which Plaintiff appeared and was represented by a non-attorney advocate. (R. at 33.)  At the hearing, the ALJ received testimony from Plaintiff through an interpreter.  (*Id*.)

3.	The ALJ issued his decision on January 15, 1998. (R. at 26-30.)  The ALJ determined that Plaintiff had disability insured status through his alleged onset date and through the date of the decision. (R. at 26.)  The ALJ analyzed Plaintiff's claim according to the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f) and *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993).  At the first step of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (*Id*.)  At the second step, the ALJ determined that Plaintiff had severe impairments consisting of status post tonsillectomy and sinus surgery; and borderline intellectual functioning.  At the third step of the sequential analysis, the ALJ found that the severity of Plaintiff's impairments had not met or equaled any of the impairments found in the Listing of Impairments, Appendix 1 to Subpart P, 20 C.F.R. §§ 404.1501-.1599.  (*Id.*)  The ALJ then found that Plaintiff had the residual functional capacity for unlimited physical functioning, limited only by his borderline intellectual functioning.  At step four, the ALJ determined that Plaintiff was able to perform his past relevant work as a construction worker.  Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

4.	On March 2, 1998, Plaintiff filed a request for review of the ALJ's decision. (R. at 19.)  On May 24, 1999, the Appeals Council extended time to submit additional evidence relevant

to the issues considered in the hearing decision of January 15, 1998. (R. at 9.) On October 21, 1999, the Appeals Council denied the request for review. (R. at 6-7.) Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Plaintiff filed this action on December 10, 1999, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §405(g).

**Standard of Review**

5.  The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *See Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (citation omitted)). A decision of an ALJ is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence on the record. *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

6.  In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *See* 42 U.S.C. §423(d)(1)(A); *Thompson v. Sullivan*, 987 F.2d at 1486. The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *See Thompson v. Sullivan*, 987 F.2d at 1487.

7. At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *See id.*

**Administrative Record**

8. Beginning in August 1995, Dr. Roland Sanchez, M.D. treated Plaintiff for complaints such as ulcers, watery eyes and a sore throat. (R. at 151-160.) On November 6, 1996, Dr. Sanchez wrote that Plaintiff suffered from disabling anxiety and depression, was unable to work, and needed further evaluation and treatment. (R. at 150.) On December 2, 1996, Dr. Sanchez reiterated that Plaintiff was disabled due to anxiety and depression, needed to be referred to a psychiatrist, and remained disabled until he received psychiatric treatment. (R. at 161.)

9. On December 19, 1995, Dr. James E. Martinez, M.D. examined Plaintiff in follow up for minimally elevated liver function tests, left-sided abdominal pain and constipation.(R. at 133-36.) Plaintiff stated that four months before, an herbalist had told him he had an inflamed liver. (R. at 136.) Dr. Martinez noted that Plaintiff was a construction worker who had been unemployed for four months. (*Id.*) On January 16, 1996, Dr. Martinez, performed a flexible sigmoidoscopy, which revealed hemorrhoids but was otherwise normal. (*Id.*) An abdominal ultrasound was also normal. (R. at 135.) Dr. Martinez recommended a daily fiber supplement and that the liver function tests be

repeated in six months. (R. at 133-34.)

10.     On February 6, 1996, Plaintiff presented to Dr. Frederick Fiber, M.D., with complaints of a lump sensation in his troat and problems with his voice. (R. at 146.) On February 13, 1996, Dr. Fiber diagnosed chronic sinusitis, deviated septum with septal perforation and chronic tonsillitis. (R. at 145.) On April 15, 1996, Plaintiff underwent a tonsillectomy and sinus surgery with good results. (R. at 143.)

11.     On January 30, 1997, Dr. George Baca, M.D., a psychiatrist, wrote that Plaintiff was in treatment for depression and anxiety attacks, and was undergoing and trial of medication. (R. at 162.) This is the extent of the records from Dr. Baca.

12.     On March 31, 1997 and April 8, 1997, Dr. Joseph Cardillo, Ph.D., a clinical psychologist, performed a consultative examination of Plaintiff. (R. at 163-168.) Dr. Cardillo observed no overt signs of depression. (*Id.*) Dr. Cardillo noted that Plaintiff had only learned English after he moved to the United States in 1970 and had difficulty reading English. (R. at 164.) Plaintiff told Dr. Cardillo that he does not work because of vertigo. (R. at 164.) Dr. Cardillo administered the WAIS-R and assessed Plaintiff's verbal IQ at 68, his performance IQ at 74, and full scale IQ at 69. (R. at 165.) Dr. Cardillo noted that the verbal IQ score might be a slight underestimate of Plaintiff's potential because English was not his first language and his very limited education. (*Id.*) Plaintiff's WMS-R scores were consistent with his WAIS-R scores, in the mildly deficient to the borderline deficient ranges. (R. at 166.)

13.     Dr. Cardillo concluded that Plaintiff was functioning in the borderline deficient range of intelligence and that his scores were a good estimate of his current level of functioning. (R. at 166.) Dr. Cardillo observed that Plaintiff's job history was stable until his complaints of vertigo and

that, aside form the vertigo, Plaintiff was qualified primarily for manual labor or relatively simple jobs. (*Id.*) Dr. Cardillo also completed a form entitled "Medical Assessment of Ability to Do Work-Related Activities (Mental)" on which he rated Plaintiff as poor on his ability to deal with the public, use judgment, deal with work stress, function independently, maintain attention/concentration and demonstrate reliability. (R. at 167-168.) Dr. Cardillo rated Plaintiff ability to understand, remember and carry out detailed or complex job instruction at fair to poor or none. (R. at 168.)

      14.    On August 15, 1997, Dr. Jill Marjama-Lyons, M.D. performed a consultative neurological examination. (R. at 170-176.) Dr. Marjama-Lyons noted that Plaintiff's medical records did not indicate any evidence of neurological dysfunction. (R. at 170.) Plaintiff had a cheerful affect and did not appear to be clinically depressed. (R. at 171.) A neurological examination was "entirely normal' with "absolutely no evidence" . . . "to suggest that he should have any trouble with a balance disorder whatsoever." (R. at 172.) Dr. Marjama-Lyons concluded that Plaintiff had no physical limitations and that he had no identifiable neurological disorder that would prevent him from working. (*Id.*)

      15.    Plaintiff stated on a daily activities questionnaire that he waters trees on his one and quarter acre property, cuts wood for a wood burning stove, does minor repairs, helps his wife sweep and take out the trash, drives, enjoys dinner with friends a relatives, belongs to religious groups, and participates in his hobbies of fishing, reading and studying. (R. at 115-120.) Plaintiff testified that cleans the yard, accompanies his wife to the store and to recreation with his daughters. (R. at 47.) He gets headaches when he works "really hard" outside in the sun. (R. at 50.) Plaintiff testified that counseling and Prozac helped his psychological problems. (R. at 51.) Plaintiff stated that "I feel like everybody's looking at me and I feel ashamed." (R. at 52.) He also recounted that he become

agitated if someone looks at him, has difficulty concentrating, and is very nervous. (R. at 52.)

**Discussion**

16.     In support of his Motion to Reverse or Remand the Administrative Agency Decision, Plaintiff argues that the ALJ erred in determining that his impairments did not meet the listings and in determining that he can return to his past relevant work as a construction worker.

17.     Plaintiff contends that the ALJ erred in his consideration of Listing 12.05(c) at step three. Listing 12.05(C) presumes a claimant to be disabled if he meets a two-pronged test: (1) "[a] valid verbal, performance, or full scale IQ of 60 through 70" and (2) "a physical or other mental impairment imposing additional and significant work-related limitation of function." *See* 20 C. F. R., pt. 404, subpt. P., App. 1, 12.05(C). Where verbal, performance and full-scale IQ scores are provided, as on the WAIS-R test, the Commissioner must consider the lowest of these scores in conjunction with Listing 12.05(C). *See* 20 C.F.R., pt. 404, subpt. p., app. 1, 12.00 D.

18.     In his discussion of §12.05(C), the ALJ acknowledged that Dr. Cardillo, Ph.D. determined that Plaintiff has a full scale IQ of 69, but qualified this score by stating that its is probably a slight underestimate of his potential intellectual functioning. (R. at 29.) However, Plaintiff's verbal IQ at 68 and full scale IQ at 69 are well within the 60 to 70 range. Under the plain language of the regulation, Plaintiff satisfied the first prong of 12.05(C). *See Anderson v. Sullivan*, 925 F.2d 220, 223 (7th Cir.1991) (standard error range should not be factored into Listing 12.05(C)'s IQ score because the Commissioner was entitled to rely on the plain language of the regulation).

19.     The true question in this case is whether Plaintiff satisfied the second prong of Listing 12.05 (C), which requires the claimant to have a physical or other mental impairment imposing additional and significant work-related limitation of function. The regulations do not define

"significant," but courts have held that a "significant limitation" of function for purposes of Listing 12.05(C), is one that has more than a slight or minimal effect on the claimant's ability to perform basic work. *See Warren v. Shalala*, 29 F.3d 1287, 1291 (8th Cir.1994). The Tenth Circuit has defined this prong as follows: a decision regarding whether a claimant has a §12.05(C) significant limitation should closely parallel the step two standard, and is to be made without consideration of whether the claimant can perform any gainful activity beyond the analysis as made at step two. *See Hinkle v. Apfel*, 132 F. 3d 1349, 1352-53 (10th Cir. 1997). However, "the significant limitation under section 12.05(C) need not be disabling in and of itself." *Branham v. Heckler*, 775 F.2d 1271, 1273 (4th Cir.1985).

20.     In this case, the ALJ found that Plaintiff did not demonstrate a marked restriction of daily activities, maintaining social functioning and no repeated episodes of deterioration or decompensation in work or work-like settings. (R. at 29.) Plaintiff contends that these findings are not supported by substantial evidence in light of Dr. Cardillo's report and records of Dr. Baca and Dr. Sanchez. The Commissioner takes the position that the finding is supported by substantial evidence because the bulk of the record shows that Plaintiff's impairment has not limited his daily activities.

21.     On November 6, 1996, Dr. Sanchez wrote that Plaintiff suffered from disabling anxiety and depression, was unable to work, and needed further evaluation and treatment. (R. at 150.) On December 2, 1996, Dr. Sanchez reiterated that Plaintiff was disabled due to anxiety and depression, needed to be referred to a psychiatrist, and remained disabled until he received psychiatric treatment. (R. at 161.) On January 30, 1997, Dr. George Baca, M.D., a psychiatrist, wrote that Plaintiff was in treatment for depression and anxiety attacks, and was undergoing and trial of medication. (R. at

162.) The ALJ properly discounted these opinions as brief, conclusory and unsupported. *See Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir.1994). However, the ALJ failed to discuss the Dr. Cardillo's medical assessment. (R. at 27-28.)

22. Dr. Cardillo completed a form entitled "Medical Assessment of Ability to Do Work-Related Activities (Mental)" on which he rated Plaintiff as poor on his ability to deal with the public, use judgment, deal with work stress, function independently, maintain attention/concentration and demonstrate reliability. (R. at 167-168.) Dr. Cardillo rated Plaintiff ability to understand, remember and carry out detailed or complex job instruction at fair to poor or none. (R. at 168.)

23. The Court finds that Dr. Cardillo's assessment raises the same problem discussed by our circuit court in *Cruse v. Secretary of Dept. of Health and Human Services*, 49 F.3d 614 (10th Cir. 1995). There, the Tenth Circuit found that the definition of "fair," as contained in the medical assessment form, was the equivalent to a "marked" limitation and the use of the term "fair" on the medical assessment form was evidence of disability. *See id.* at 618. The ALJ, in contrast, found that Plaintiff did not suffer from a mental impairment. The conflict between the ALJ's conclusion and Dr. Cardillo's medical assessment requires reconsideration on remand.

24. Plaintiff also argues that the ALJ erred in determining that Plaintiff can return to his past relevant work at step four of the sequential evaluation. Step four of the sequential analysis is comprised of three phases. *See Winfrey v. Chater*, 92 F. 3d 1017, 1023 (10th Cir. 1996). In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity. *See id.* (*citing Henrie v. United States Dept of Health & Hum. Servs.*, 13 F. 3d 359, 361 (10th Cir. 1993)). In the second phase, the ALJ must determine the physical and mental demands of the claimant's past relevant work. *See id.* In the final phase, the ALJ determines whether the claimant has the ability to

meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. *See id*.

25.     Because this matter is being remanded for resolution of the conflict concerning the "fair" evaluation, the ALJ should also review the second phase of the step four analysis, in the event the analysis proceeds beyond step three. At the second phase of the step four analysis, the ALJ must make findings regarding the physical and mental demands of the claimant's past relevant work. To make necessary findings, the ALJ must obtain adequate "factual information about those work demands which have a bearing on the medically established limitations." *Winfrey v. Chater*, 92 F.3d 1017, 1023  When the claimant has a mental impairment, care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety such as speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work. *See Winfrey*, 92 F.3d at 1024 (quoting SSR 82-62, Soc. Sec. Rep. Serv., Rulings 1975-1982, at 812).

26.     On remand, the ALJ should make inquiry into and findings specifying the mental demands of Plaintiff past relevant work, either as Plaintiff actually performed the work or as it is customarily performed in the national economy. Because this matter is remanded, the Court need not address the third phase of the step four inquiry under *Winfrey*. On remand, if Plaintiff is not found to be disabled at step three, the Commissioner should complete the step four analysis, and proceed to step five,[1] if appropriate.

---

[1] If upon remand, the ALJ's analysis reaches step five, I suggest a finding concerning the impact of Plaintiff's illiteracy in English on his ability to work. El analfabetismo en el idioma predominante puede afectar de forma sustancial la capacidad de encontrar trabajo en la economía nacional. *See* Medical-Vocational Guidelines, 20 C.F.R. § 404 Subpt. P, App. 2; Rule 202.16; Social Security Acquiescence Ruling 86-3(5).

## RECOMMENDED DISPOSITION

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 11) be granted and that this matter be remanded to the Commissioner for resolution of the conflict between the ALJ's conclusion and Dr. Cardillo's medical assessment and, if Plaintiff is not found to be disabled at step three, completion of all three phases of the step four analysis, as well as the step five analysis, if appropriate. Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may file with the Clerk of the District Court written objections to such proposed findings and recommendations. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**